UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JAY DARDENNE, AS | * |
| LIEUTENANT GOVENOR OF | * Civil Action No. 3:14-cv-00150 |
| THE STATE OF LOUISIANA AND AS | *  SDD-SCR |
| COMMISSIONER OF THE LOUISIANA | * |
| DEPARTMENT OF CULTURE, | * |
| RECREATION AND TOURISM, | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * |
| | * |
| MOVEON.ORG CIVIC ACTION, | * |
| | * |
| Defendant | * |

**DEFENDANT MOVEON.ORG CIVIC ACTION'S
MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

This case poses the question of whether the State of Louisiana may use federal and state trademark law to censor a parody of the State's own tourism slogan and logo created for the purpose of criticizing the State's policy on a controversial and important public policy issue. The answer is no.  "In general, a reference to a. . . trademark may be permissible if the use is purely for parodic purposes."  *Lyons Partnership v. Giannoulas*, 179 F.3d 384, 388 (5th Cir. 1999).

In an advertisement posted on a single billboard on I-10 near Baton Rouge, Defendant MoveOn.org Civic Action ("MoveOn"), a national progressive non-profit advocacy organization, parodies the State of Louisiana's tourism slogan, "Louisiana--Pick Your Passion," and the State's tourism logo, in order to criticize the public policy of the State of Louisiana and its chief executive, the Governor, with respect to the issue of whether the State of Louisiana should accept federally-funded expansion of Medicaid coverage under the federal health care

reform law, the Patient Protection and Affordable Care Act of 2010, 124 Stat. 119. (Complaint, Ex. C, Doc. 1-3).  Plaintiff Jay Dardenne, Lieutenant Governor, and Commissioner and acting Secretary of the Louisiana Department of Culture, Recreation and Tourism, has filed this case and seeks a preliminary injunction to force MoveOn to take down the billboard and to cease any other public communication depicting that billboard.  No reasonable person viewing this advertisement, which is harshly critical of the State, could believe the billboard is conveying a message from the State itself. And the Lieutenant Governor, in his moving papers, has not cited a *single instance* of anyone actually being confused about the source of the message or associating the billboard with the Department of Culture, Recreation and Tourism.

In these circumstances, the Lieutenant Governor is not entitled to a preliminary injunction.  First, he is not likely to prevail on the merits of his claim that the MoveOn billboard (the "Billboard") infringes the Department's trademark rights in its logo (the "Service Mark") under either the federal Lanham Act or under Louisiana law.  To establish infringement under either the Lanham Act or Louisiana law, assuming the validity of the design mark, the Lieutenant Governor must prove a likelihood of consumer confusion—that is, a likelihood of confusion in the minds of people who might be considering visiting Louisiana or attractions in Louisiana, as to the source, affiliation or sponsorship of the Billboard.  That he cannot do.

When a trademark is parodied, it is inherently obvious to the consumer that the trademark owner is not the source of the message, and thus generally no likelihood of confusion can be found.  And the First Amendment interest underlying that doctrine is particularly strong when the parody is created for the purpose of expressing ideas, not for selling goods or services. That is the situation here.

1154289v1

Contrary to the Lieutenant Governor's suggestion, the Service Mark (the tourism logo) is not the separate property of the Lieutenant Governor or his Office.  It belongs to the State itself, and is used to promote the State as a desirable place to visit or live.  The use of the slogan to suggest that the State is not so desirable a place because of its health care policy is clearly a permissible parodic use of the mark.  Further, in the context of the parody, consideration of the other relevant factors leads to the conclusion that there is no reasonable possibility, let alone a likelihood, of consumer confusion.

The Lieutenant Governor has also failed to establish any of the other three elements necessary to obtain a preliminary injunction.  There is no threat of any injury here at all, let alone the substantial threat of irreparable harm that must exist for an injunction to be issued.  The balance of hardships favors MoveOn since there is no need for an injunction to protect the State from damage due to confusion over the source of the Billboard's message or, for that matter, to preserve the value of the Service Mark in the promotion of tourism, while an injunction would censor MoveOn's right to criticize the State Government of Louisiana in the way it deems fit, a right at the core of the protection of the First Amendment.  And issuance of an injunction would be adverse to the public interest for the same reason: there is no need for an injunction to prevent confusion or to protect the value of the Service Mark, whereas an injunction would infringe on MoveOn's core right of free speech.

## STATEMENT OF FACTS

MoveOn Civic Action is a California nonprofit, public benefit corporation formed in 2001.   (Declaration of Anna Galland ("Galland Dec.") ¶3).   Its sister organization, MoveOn Political Action, formed in 1998, is a federal political committee.   MoveOn  Civic Action advocates for progressive policies, educates the public about public policy issues and uses online organizing as a means to empower citizens to take grassroots actions to influence legislation and

3

policies, and the positions of elected officials. Its signature programs include an online petition tool that allows anyone to organize an online petition campaign. (*Id*. ¶¶3-4). The MoveOn organizations have developed and maintain a list of about eight million supporters across the United States, including in Louisiana, who have taken actions organized by and/or donated to the MoveOn groups. (*Id*. ¶5).

Earlier in 2104, MoveOn decided to launch a campaign aimed at changing the minds of some of the Governors and legislative leaders who had resisted allowing their states to take advantage of the federally-funded expansion of Medicaid under the ACA. During February, MoveOn staffers and consultants came up with the idea of parodying states' tourism slogans and logos. (*Id*. ¶¶6-7). The specific purpose of using the states' tourism slogans and logos was to communicate to citizens within the state the idea that, whereas the state tourism campaigns were promoting the state as a desirable place to visit, the state might be considered an undesirable place to visit because it was denying thousands of people health care they could obtain for free, at the federal government's expense, if only the state leaders would change their minds about Medicaid expansion. (*Id*. ¶7).

In late February, MoveOn created advertisements parodying the state tourism logos and slogans in precisely this way, for the states of Wisconsin, Virginia, Texas, Nebraska, Florida and Louisiana. (*Id*. ¶8). In Virginia, the parody was aimed at the policy position of the Republican Speaker and other Republicans in the state House of Delegates; in the other states, it was directed at the State's policy as determined by the Governor. (*Id*. ¶8). To display each advertisement, MoveOn purchased use of a single billboard within each state. Copies of the billboard advertisements in all six states are attached to the Galland Declaration as Exhibit A. A copy of the Louisiana Billboard is attached as an Exhibit to the Plaintiff's Memorandum (Doc. 2-

6) and that same copy is attached for ready reference as Exhibit B to the Galland Declaration.  In no case did MoveOn put up any billboard with these advertisements outside the state being targeted; thus, no potential tourists from out of state would view the billboard, unless they had already decided to visit the state.  (*Id*. ¶10).

No state government official in any state, other than Lieutenant Governor Dardenne, raised any objection to use of the state's tourism slogan or logo in these billboards.  (*Id*. ¶11).

MoveOn's Baton Rouge Billboard advertisement is scheduled to end on April 4, although it may stay up longer without further payment by MoveOn if no one else wants to rent that particular billboard.  MoveOn has not made any determination of whether to continue the Billboard and/or purchase advertisements on additional billboards.  (*Id*. ¶12).

The Office of the Lieutenant Governor has registered with the Louisiana Secretary of State a design mark, *i.e.*, a logo, consisting of the word "Louisiana" in purple uppercase letters with exclamation points replacing each letter "I"; and the words "Pick Your Passion" in red in a modified cursive font angled upward from left to right.  (Dardenne Aff. Exh. A, Doc. 2-7) (the "State Service Mark"). That logo in color is pictured on page 4 of Exhibit E to the Dardenne Affidavit (Doc. 2-7) at 4.  The State Department of Culture, Recreation and Tourism has registered only the mark PICK YOUR PASSION—that is, only the words, with no design—with the U.S. Patent and Trademark Office (the "Federal Service Mark"). (Dardenne Aff. Exh. B, Doc. 2-4).

The MoveOn advertisement posted on the Billboard has the word "Louisiana" in purple with only the first "I" as an exclamation point; and in red, non-cursive font, the statement, "Pick your passion! But hope you don't love your health.  Gov. Jindal's denying Medicaid to

1154289v1

242,000 people."  At the bottom right of the Billboard, in small print but clearly visible from the

highway, is MoveOn.org's own logo.  (Galland Dec. Exh. B).

## DISCUSSION

### I.   STANDARDS FOR GRANTING PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary equitable remedy that may be

granted only if plaintiff establishes the following four elements:  (1) a substantial likelihood of

success on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the

injunction is denied, (3) that the threatened injury outweighs any damage that the injunction

might cause defendants, and (4) that the injunction will not disserve the public interest."  *Sugar*

*Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999); *see also*, *Paulsson Geophysical*

*Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008) (citing  *Speaks v. Kruse*, 445 F.3d 396,

399–400 (5th Cir. 2006); *Acme Refrigeration Supplies, Inc. v. Acme Refrigeration of Baton*

*Rouge*, 961 F.Supp. 936, 938 (E.D. La. 2003).  The Lieutenant Governor has not established any

of those four elements in this case.

### II.   THE LIEUTENANT GOVERNOR IS NOT LIKELY TO SUCCEED ON THE MERITS

The Lieutenant Governor is not likely to succeed on the merits of his claims for

trademark infringement under either federal or state law because he cannot show the likelihood

of confusion necessary to prevail.

Two threshold matters are raised by the Lieutenant Governor's filings.  First, the

Plaintiff's Memorandum leaves some question as to exactly what mark the Lieutenant Governor

is claiming has been infringed or diluted. The Lieutenant Governor indicates that he does not

object to MoveOn's use of the word mark PICK YOUR PASSION alone.  (Complaint ¶31;

Plaintiff's Memorandum In Support of Motion for Preliminary Injunction, Doc. 2-1 ("Pl. Mem.")

1154289v1

at 28).  Thus, the Lieutenant Governor is, apparently, not alleging that MoveOn has infringed the Federal Service Mark in any way, since that mark consists solely of the words.  What the Lieutenant Governor appears to be alleging is that MoveOn has infringed the federally-unregistered, state-registered *design* mark—the color logo pictured on page 4 of Exhibit E to the Dardenne Affidavit (Doc. 2-7 at 4).

The Lieutenant Governor also suggests that MoveOn appropriated "trade dress" by including "use of the photograph of crawfish on a plate" that is the same as a photograph on the Department's website. (Pl. Mem. at 22).  No claim of copyright infringement of any photograph is asserted in the Complaint, however.  The picture of the plate of crawfish is *not* part of the Federal Service Mark, the State Service Mark or the logo protected by the State Service Mark, nor are there allegations in the Complaint, evidence submitted or arguments made in Plaintiff's Memorandum establishing any basis for contending that the picture qualifies for protection as an independent designation identifying the State's services.  Accordingly, it must be assumed that the claims relied upon by Plaintiff to support his Motion are those for infringement of the color logo mark LOUISIANA PICK YOUR PASSION as described in the State Service Mark registration.  That mark will be referred to in this Memorandum as the "Service Mark."

A second threshold ambiguity arises from the allegations of the Complaint, especially when read together with Plaintiff's Memorandum, as to which causes of action the Lieutenant Governor is relying upon in this action and, in particular, to support his Motion for Preliminary Injunction.  A number of potential causes of action can be asserted to remedy an alleged infringement of a trademark or service mark.  If the mark is federally registered, an infringement claim can be brought under §32 of the Lanham Act, 15 USC §1114.  In addition or alternatively, the owner of a mark, whether federally registered or not, can bring a claim under

7

§43(a) of the Lanham Act, 15 USC §1125(a), the source of federal protection against unfair competition. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 783, 768, 120 L.Ed.2d, 112 S.Ct. 2753 (1992); *Norman M. Morris Corp. v. Weinstein,* 466 F.2d 137 (5th Cir. 1972). Likewise, if the mark is registered pursuant to La. R.S. 51:214, the registrant may bring an action for infringement of the registered mark under La. R.S. 51:222. Finally, whether the mark is registered or unregistered, the owner may maintain an action for infringement under Louisiana's "jurisprudentially developing law" of unfair competition. *Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 94-2203 (La. 4/10/95), 652 So. 2d 1306, 1311-12.[1]

The only state trademark infringement cause of action mentioned in the Complaint is the one afforded by La R.S. 51:222, based on the service mark registered with the Secretary of State. (Complaint, ¶¶ 4, 20, 22) Presumably, then, this is the only state law theory the Lieutenant Governor relies upon to support his Motion. However, in discussing the legal principles governing the Lieutenant Governor's state claims, Plaintiff's Memorandum cites extensively from the *Gulf Coast Bank* decision, *supra,* a case based upon Louisiana's jurisprudentially developing law of unfair competition rather than the statutory cause of action for infringement of a state registered mark. (Pl. Mem. at 15-18) Likewise, although alleging federal registration of the word mark PICK YOUR PASSION, rather than citing §32 of the Lanham Act, 15 USC §1114, as the basis for Plaintiff's federal claim, the Complaint mentions specifically only §43, 15 USC §1125, the federal unfair competition statute. Complaint, ¶22. Nor does Plaintiff's Memorandum clarify which of the Lanham Act claims Plaintiff is asserting.

---

[1] In other U.S. jurisdictions, claims of infringement based on unfair competition find their source in the "common law." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:7, at 2–17 (2012) and cases cited there.

Fortunately, at this stage of the litigation and in order to decide the instant Motion, it is not necessary to determine which infringement theories the Lieutenant Governor is asserting against MoveOn.  This is so because, as discussed *infra,* the same legal principles apply to determine the propriety of issuance of a preliminary injunction under each of the four theories of recovery upon which the Lieutenant Governor may be relying.[2]   None of these theories supports the relief sought.

### A.     The Lieutenant Governor Cannot Establish Infringement Under the Lanham Act

### 1.     The Lieutenant Governor Has the Burden of Proving  Likelihood of Confusion

"To prevail on their trademark infringement claim, the plaintiffs must show two things.  First they must establish ownership in a legally protectable mark, and second, they must show infringement by demonstrating a likelihood of confusion." *Board of Supervisors for Louisiana State Univ. Agric. & Mech. College v. Smack Apparel Co*., 550 F.3d 465, 474 (5th Cir. 2008).  Assuming the State, through the Office of Lieutenant Governor and the Department, has a legally protectable mark in the form of the Service Mark, the central issue is likelihood of confusion.  Specifically, to prevail on its infringement claim, plaintiff must show that defendant's use of the mark "creates a likelihood of confusion in the minds of potential consumers as to the

---

[2] The Lieutenant Governor included in his Complaint claims under the federal and state anti-dilution acts.  Complaint, ¶¶ 4, 20, 22.  However, Plaintiff's Memorandum does not discuss these claims, offer any argument regarding their merits or indicate in any way that they are urged as a basis for granting the Motion for Preliminary Injunction.  Although there are a number of reasons why the anti-dilution claims asserted in the Complaint clearly have no merit, including without limitation the parodic character of MoveOn's usage, because the Lieutenant Governor is not relying upon these causes of action as a basis for his Motion, MoveOn will not burden the Court with briefing regarding them.

1154289v1

'source, affiliation or sponsorship' of" defendant's goods or services. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000) (quoting *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998)). The "burden of proof of infringement must be borne by the party claiming injury." *Sun Banks of Florida, Inc. v. Sun Fed. Savings & Loan Ass'*n, 651 F.3d 311, 315 (5th Cir. 1981).

      Before discussing the likelihood of confusion analysis to be employed in this case, MoveOn will address several portions of the Plaintiff's Memorandum relating to certain legal principles and the relevant burden of proof.   First, Plaintiff discusses "[t]he fair use doctrine" and "the nominative fair use defense" and some of the requirements for their applicability and then proceeds immediately to discuss parody. (Pl. Mem. at 22-23)   To the extent the Lieutenant Governor means to suggest that parody is a type of trademark "fair use" or "nominative fair use," he is incorrect.

      As explained by Professor McCarthy, there are only two types of "fair use" in trademark law, neither of which encompasses parody.  2 *McCarthy* § 11:45, at 11–117 - 118 (2012).  The first is "classic fair use," which is "a defense to a charge of trademark infringement under which the junior user argues that it is not using a descriptive, geographically descriptive or personal name designation in a trademark sense, but only to describe the defendant's goods or services, or their geographic origin, or to name the person involved in running the business." *Id.* The second type of trademark fair use is "nominative fair use," where the defendant uses "another's trademark to identify not the defendant's goods and services, but the *plaintiff's* goods or services." Use of a competitor's marks in comparative advertising is one type of nominative fair use. *August Storck K.G. v. Nabisco, Inc.,* 59 F.3d 616 (C.A.7 (Ill.), 1995).  *See al*so, *New Kids on the Block v. News America Publishing*, Inc., 971 F.2d 302, 306 (9th Cir. 1992) (use of

plaintiff's mark by a newspaper in connection with a public poll regarding which member of a band was the respondents' favorite was nominative fair use).  Although parodic use of a mark bears some similarity to nominative fair use, the two are different and each calls for a different analysis.

Another area of confusion in Plaintiff's Memorandum relates to the crucial issue of the burden of proof to be borne by each of the parties in litigating the Lieutenant Governor's Motion.  While recognizing at one point that "the fact that conduct is a parody is not an affirmative defense to trademark infringement" (Pl. Mem. at 23), Plaintiff's Memorandum also suggests contradictorily that MoveOn bears the burden of establishing its "fair use...defense," citing a case involving copyright infringement. (Pl. Mem. at 10).  While the fact that a usage is a parody is an extremely important factor in analyzing both species of infringement, the law applicable with respect to parody of a copyrighted work differs significantly from that applicable to parody of a trademark and each results in a different allocation of the burden of proof on the issue.

To establish a *prima facie* case of copyright infringement, the plaintiff must prove (1) ownership of a valid copyright, (2) unauthorized copying and (3) substantial similarity between the protected work and the copied work.  *Peel & Company, Inc. v. The Rug Market,* 238 F.3d 391, 394-95 (5th Cir. 2001).  In copyright law, parody is analyzed as a type of "fair use."  A claim by the defendant that its use of a copyrighted work is for purposes of *any* form of fair use is not considered in determining any of the elements of plaintiff's *prima facie* case of infringement, but only becomes relevant after plaintiff has borne its burden to establish infringement. *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 574, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (defendant's song would be an infringement of plaintiff's rights in its

1154289v1

copyrighted musical work but for a finding of fair use through parody). Thus, copyright fair use under 17 U.S.C. §107, including parody contended to qualify as fair use, is a true affirmative defense with respect to which the defendant bears the burden of proof. *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 561, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).[3]

The substantive and procedural treatment of parody in trademark cases is very different. As discussed in detail *infra,* usage of plaintiff's mark to parody that mark or its owner is considered in arriving at the basic determination of whether the usage results in a likelihood of confusion, which is always the lynchpin of plaintiff's case for trademark infringement. It is *plaintiff's* burden to establish likelihood of confusion under the factors established by the courts to analyze that issue and to establish that such likelihood exists despite the fact that the defendant is using the mark for purposes of parody. Thus, the Lieutenant Governor's effort to shift the burden of proof on the issue of parody to MoveOn by analogy to copyright law should be rejected.

### 2.    There Is No Likelihood of Confusion Because the Use Is a Parody

"Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Westchester Media*, 214 F.3d at 664. In determining a likelihood of confusion, the Fifth Circuit generally examines the following factors or "digits": "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion;

---

[3] §107 of the Copyright Act sets forth four non-exclusive factors typically considered by the courts in determining whether any particular usage should be considered "fair" and therefore immunized from infringement liability. Because of its nature, true parody is generally a strong candidate for copyright fair use treatment. However, each case must be considered individually, applying the four statutory criteria to the particular facts at hand. *Campbell, supra.*

1154289v1

and (8) care exercised by potential purchasers." *Xtreme Lashes, Inc. v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).  Like the similar formulations applied by other circuits, the digits are flexible and non-exhaustive, are not applied mechanically to every case or as "an exact calculus," and serve merely as guides to assist in determining the likelihood that consumers will be confused by defendant's usage of plaintiff's mark. *The Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 485 (5th Cir. 2004).  Application of each digit is considered in light of the specific circumstances of the case. *Id.*

When defendant's use of a trademark is not to sell goods or services but to express ideas or opinions, the analysis under these factors is altered to reflect the fact that the use implicates a First Amendment right. *Westchester Media*, 214 F.3d at 664.  Such a case "involves the tension between the protection afforded by the Lanham Act to trademark owners and the protection afforded by the First Amendment to expressive activity." *Id*.  In that context, the application of these factors is fundamentally altered when the defendant's use of plaintiff's trademark is as a parody.  "[P]arody is not a defense to trademark infringement but rather another factor to be considered, which weighs against a finding of a likelihood of confusion." *Elvis Presley Enterprise*s, 141 F.3d at 198. "[A] successful parody of the original mark weighs against a likelihood of confusion because, even though it portrays the original, it also sends the message that it is not the original and is a parody, thereby lessening any potential confusion." *Id*. at 199. For that reason, use of a mark as a parody changes the way in which the relevant factors would normally be applied. *Lyons Partnership*, 179 F.3d at 389.  Thus, "[i[n general, a reference to a copyrighted work or trademark may be permissible if the use is purely for parodic purpose.  To the extent the original work must be referenced in order to accomplish the parody, that reference is acceptable." *Id*. at 388.

1154289v1

In this case, MoveOn is clearly using a highly modified version of the Service Mark as a parody—making fun of the State's logo and slogan in order to criticize the State.   As noted, MoveOn's intent was to communicate to citizens within the state the message that, whereas the Louisiana tourism campaign is promoting the state as a desirable place to visit, the state might be considered an *undesirable* place to visit because it is denying thousands of people health care they could obtain for free, at the federal government's expense, if only the state leaders would change their minds about Medicaid expansion.  (Galland Dec. ¶7). The Billboard's unambiguous suggestion of the ironic incongruity seen when the State's idealized public relations claims are juxtaposed against the State's public policy being criticized is a classic and obvious parodic use of the State's mark. As a true parody, the Billboard clearly "sends the message that it is not the original and is a parody," *Elvis Presley Enterprises*, 141 F.3d at 198, because no reasonable viewer could conclude that a sign that says, "hope you don't love your health" and criticizes Gov. Jindal for "denying Medicaid to 242,000 people" was a message from the State of Louisiana, or any of its agencies, especially an agency whose very function is to promote a wholesome image of the state and the attractive qualities it offers its visitors and residents.

The Lieutenant Governor contends that viewers of the Billboard will believe its message is a promotion by the Department of Culture, Recreation and Tourism, because a viewer will only have six seconds to read the Billboard.  (Pl. Mem. at 27).  The Lieutenant Governor relies on the affidavit of a marketing professional who opines that a viewer of the Billboard is more likely to read the message ("hope you don't love your health. Gov. Jindal is denying Medicaid…") than to notice MoveOn's logo at the bottom of the Billboard.  (Affidavit of Eric Morgan, Pl. Mem. Exh. C, Doc 2-11). MoveOn does not disagree that the average viewer of the Billboard is not likely to focus on MoveOn's logo.  But there are only two possibilities: either the

14

viewer looks at the message in red under the word "Louisiana" or she doesn't.  If she looks at it, the words themselves will convey clearly and inherently that the message is not coming from the State of Louisiana; knowing the particular identity of the source is not necessary to parodic discernment.  If the viewer doesn't look at the message, then there is nothing to be confused about in the first place.

Thus, for example, in *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005), the Rev. Jerry Falwell held common law trademarks in "Jerry Falwell" and "Falwell."  Defendant then began using the domain name www.falwell.com for a website critical of Rev. Falwell's views. The Court held that defendant's use of a domain name incorporating the name of Rev. Jerry Falwell—for the purpose of criticizing his views—was not infringing.  "No one would believe Reverend Falwell sponsored a site criticizing himself, his positions…."  *Id.* at 315.  Likewise, no one would believe that the State of Louisiana sponsored a site criticizing itself or its incumbent Governor.

The Lieutenant Governor relies on the *Lyons Partnership* case for the proposition that MoveOn's use of the State's mark is "outside the permissible bounds of parody" because it has "used substantially more of the Service Mark than is necessary to achieve its parody." That reliance is misplaced. First, the portion of *Lyons* cited by the Lieutenant Governor is the Court's general discussion of the nature and definition of parody as an art form, taken from the Supreme Court's *Campbell* decision. *Lyons Partnership*, 179 F3d at 388.  The *Lyons Partnership* Court was merely echoing the *Campbell* Court's teaching in applying the copyright fair use factors set forth in 17 USC §107 that parody, by its very nature, requires relatively extensive copying from

15

the original that may not be permissible in another context. *Campbell,* 501 U.S. 588.[4]  *Lyons Partnership* did not state or imply that a usage is somehow disqualified from treatment as a parody in a trademark likelihood of confusion analysis merely because the parodist could have used less of the mark and still achieved parodic effect;  rather, the Court merely noted that the defendant, in fact, had taken the "minimum necessary to evoke Barney."  *Lyons Partnership*, 179 F3d 388.  In any case, based upon what the Court found was "the minimum necessary," it is clear that MoveOn has taken no more here from the parodied mark than the *Lyons* defendant took there.[5]

Twice in the Plaintiff's Memorandum, the Lieutenant Governor cites extensively from the portion of the *Campbell* decision stating that commentary having "no critical bearing on the substance and style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh" has a lesser claim to being a fair use as parody. (Pl. Mem. at 25, 27, citing *Campbell* 510 U.S. at 580-81).  Plaintiff's insinuation that this comment is applicable to MoveOn's Billboard has no merit.  First, of course, *Campbell's* focus was the parody of copyrighted works, so the references to "substance and style

---

[4]  The copyright analysis of parody for fair use treatment is fundamentally different from trademark analysis in that the four statutory factors of §107 are different from the factors used in the likelihood of confusion inquiry. Indeed, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," is one for the four factors a court is to consider in deciding whether an otherwise infringing use is "fair." Thus, the quantum taken is weighed, along with the other fair use factors, to determine the issue in each individual case.

[5]  The usage *Lyons Partnership* found to be "the minimum necessary" included the use of the full visual image of the protected mark by virtue of the portrayal of the Barney character by a person dressed in a look-alike purple dinosaur costume who unmistakably imitated the parodied character in appearance and behavior. The Court simply noted that defendant had not made any other reference to the mythical world in which Barney resides, incorporated any of Barney's "friends" into the performance, had the character imitate Barney's voice or perform any Barney songs. *Lyons Partnership,* 179 F.3d at 388.

of the original composition" and to the defendant's not "working up something fresh" does not translate directly into the trademark context. Moreover, when read in context, it is clear that the works to which the Court was referring are those that simply plagiarize copyrighted works with no real purpose of commenting on the particular work borrowed from. Such usage, by its nature, is not parody at all. Notably, the Court went on immediately following these comments to state: "Parody needs to mimic an original to make its point, and so has some claim to use the creation of its victim's (or collective victims') imagination, whereas satire can stand on its own two feet and so requires justification for the very act of borrowing." *Campbell,* 510 at 580-81 and n. 14-15.

Clearly, the Billboard is not satire but a parody, aimed at lampooning the Service Mark and criticizing the policies of its owner, the State of Louisiana. MoveOn would have no interest in using the Service Mark for any other purpose and this usage clearly meets *Campbell's* definition of parody. MoveOn's use of a modified version of the Service Mark as a parody ensures that there is no real possibility, let alone a likelihood, of consumer confusion.

### 3. MoveOn's Use of a Modified Version of the Service Mark Is Strongly Protected Because It Is An Expressive Use for Non-Commercial Purposes

The First Amendment protection afforded to parodic or satirical uses of a mark is especially strong where the use is expressive and for non-commercial speech. "The First Amendment may offer little protection for a competitor who labels its commercial good with a confusingly similar mark, but '[t]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'" *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 900 (9th Cir. 2002) (quoting *L.L. Bean, Inc. v. Drake Publishing, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987)).

17

For that reason, even when the use is not parodic, the Courts have consistently found the use of a trademark solely to criticize the trademark owner, to be non-infringing. "[I]f a trademark owner could 'enjoin the use of his mark in a noncommercial context found to be negative or offensive, then a corporation could shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct.'" *CPC Int'l, Inc. v. Skippy, Inc.*, 214 F.3d 456, 462 (4th Cir. 2000)(quoting *L.L. Bean*, 811 F.2d at 33).

In *Lamparello*, *supra,* involving a website critical of the trademark holder, the Court considered and rejected another argument implicitly raised by the Lieutenant Governor in this case (Pl. Mem. at 27): the theory known as "initial interest confusion." The *Lamparello* plaintiff invoked that theory to argue that because the trademark's use was intended to attract attention initially to the defendant's message under false pretenses, it was not protected even though the viewer of the message later realized the message was critical. In rejecting plaintiff's argument, the Court stated: "Applying the initial confusion theory to gripe sites like [defendant]'s would enable the markholder to insulate himself from criticism—or at least to minimize access to it. We have already condemned such uses of the Lanham Act." *Lamparello*, 420 F.3d at 317-18.

In this case also, the Service Mark is being used by MoveOn to criticize the markholder—the State of Louisiana. The State is not entitled to enforce its Service Mark to insulate itself from criticism of itself or of its incumbent chief executive, the Governor.

### 4. The Service Mark Belongs to the State of Louisiana, Which Is the Target of the Parodic, Critical Use

The Lieutenant Governor argues that MoveOn's use is not parodic because the Service Mark is not being used to parody or criticize the markholder—the Lieutenant Governor—but rather the Governor, who occupies a distinct office within the Executive Branch.

18

(Pl. Mem. at 25-26).   The State Service Mark is registered to the Office of the Lieutenant Governor (Dardenne Aff. Exh. A); and the Federal Service Mark is registered to the "Louisiana Department of Culture, Recreation and Tourism STATE AGENCY."  (Dardenne Aff. Exh. B, Doc. 2-4 (capitals in original)).  The Lieutenant Governor attempts to separate himself from the rest of the State Government, and to suggest that he or his Office own the Service Mark rather than the State.  (Pl. Mem. at 2, 25-26).  That attempt is unavailing.

The Office of the Lieutenant Governor is indeed part of the Executive Branch of the State Government.   The State Constitution, Article 4, Section 1(A) provides that, "The executive branch shall consist of the governor, lieutenant governor, secretary of state, attorney general…."   The lieutenant governor "shall exercise the powers delegated to him by the governor….."  Constitution, Article 4, section 6.   As acting Secretary of the Department, moreover, the Lieutenant Governor is legally obligated to "[r]epresent the *public interest* in the administration of the laws establishing his Department; and he *shall be responsible to the governor*, the legislature *and the public* therefor." La. R.S. 36:204(A)(1) (emphasis added).  The Office of the Lieutenant Governor is not somehow separate from the State Government of Louisiana.[6]

More critically, as state property, the Service Mark is held by the Office of the Lieutenant Governor, *not* for the personal benefit of the Lieutenant Governor, or for the singular benefit of his Office, but for the benefit of the citizens of Louisiana.  It is the *State's* property—

_____

[6] The weakness in the Lieutenant Governor's position on this issue is underscored by the inapplicability and irrelevance of the only authority cited to support it, *Ward v. State, Dept. of Transp. & Development*, 43,948 (La. App. 2d Cir. 1/28/09), 2 So3d 1231. Presumably, Plaintiff cites this case for the statement in footnote 3 that the Court was unaware of any authority for the proposition that two state agencies are interchangeable as parties in litigation. Assuming the accuracy of this tentatively stated proposition, it offers no support for the position urged by the Lieutenant Governor.

not the personal property of Jay Dardenne.  Indeed, it is well established that the property of an agency of a state is still the property of the State itself.  *E.g., Board of Commissioners of New Orleans Levee District v. Department of Natural Resources*, 496 So.2d 281, 288 (La. 1986).  With specific reference to the function of promoting tourism, La. R.S. 36:208(F) provides that the Department's office of tourism is "responsible for performing *the functions of the state* relating to promotion and advertisement of the historical, cultural, recreational and commercial sites, events and assets of the state;" and "shall encourage and promote tourism and the tourist industry *for the benefit of the people of this and other states*…" (emphasis added).

The key issue here, then, is not—as the Lieutenant Governor would have it— whether he has any position or authority over the issue of Medicaid expansion (Pl. Mem. at 26), but rather whether the Billboard uses a trademark to parody and/or criticize the owner of the mark.  The answer is clearly yes.  Again conflating copyright law and trademark law, the Lieutenant Governor also argues that parody must "ridicule the author of the mark." (Pl. Mem. at 25)  However, parody in trademark involves usage of the mark to criticize the mark itself or its owner.  6 *McCarthy,* 31:154 at 31-363 (2013).  The individual who created, thought of or designed the mark need not be one who is the subject of the parodic criticism.

The Service Mark is the property of the State held for the use and benefit of the State's citizens.  The Billboard parodies the mark for the purpose of criticizing the policy of the State's chief executive which legally and practically is the current public policy of the State itself.  Accordingly, the Lieutenant Governor's suggestion that MoveOn's use is not "targeting the holder of the trademark" but rather "another subject," *i.e.*, the State and its Governor, is misplaced.  MoveOn's use of the Service Mark is legitimately and purely parodic and, accordingly, is non-infringing. *Lyons Partnership*,  179 F.3d at 388.

1154289v1

5.    **Analysis of the Relevant Factors Dictates a Finding of No Likelihood of Confusion**

Analysis of the other relevant "digits," or factors, applied by the Fifth Circuit, within the context of the parody, further confirms that MoveOn's use of the Service Mark creates no likelihood of confusion.[7]  As made clear by the *Lyons Partnership* Court, a finding that a challenged usage qualifies as parody radically transforms the usual analysis applying the digits of confusion and the significance of each of those factors, and the proper approach is to consider the digits in light of the usage of the mark for purposes of parody. *Lyons Partnership* at 390.

Applying that approach, the first factor to consider is the type of mark—i.e., the strength of the mark— alleged to have been infringed.  In most contexts, the stronger the mark, the more this factor weighs in favor of a finding that confusion is likely.  However, when parody is present, this factor is largely irrelevant. If anything, a finding that the allegedly infringed mark is a strong mark may have the opposite effect it usually has and weigh against a likelihood of confusion.  *Lyons Partnership*, 179 F.3d at 389 ("[T]he strength of the mark may actually make it easier for the consumer to realize that the use is a parody.")

With respect to the second digit, similarity between the two marks, once again, in the context of parody, similarity between the marks takes on a whole new meaning.  While similarity usually weighs in favor of finding a likelihood of confusion, as with copyright parody, relatively large-scale similarity is essential to conjure up the subject of the criticism in order to assure that the parodist's commentary is conveyed. *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group*, 886 F.2d 490 (2d Cir. 1989); *Campbell*, 510 U.S. at 588.  Thus, in the case of

---

[7] As noted above, in determining a likelihood of confusion, the Fifth Circuit generally examines the following factors or "digits: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, Inc. v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

1154289v1

clearly discernible parody as exists here, this factor is again largely irrelevant to the issue of likelihood of confusion. The Billboard uses a portion of the design of the Service Mark, including the word "Louisiana" in purple with one exclamation point in lieu of an "I," not the two exclamation points used in the Service Mark, and the words "Pick Your Passion," which are not set off and do not appear alone or in the same script as in the Service Mark. These references are sufficient to evoke and clearly reference the parodied Service Mark, but the remainder of the Billboard displaying the critical message ("hope you don't love your health. Gov. Jindal is denying Medicaid….") clearly differentiates it from the Service Mark and forecloses any reasonable likelihood that someone reading the Billboard could be confused.

With respect to the similarity of products or services, obviously MoveOn has not made any use of the mark to promote any products or services at all, let alone services in any way similar to those for which the Service Mark is being used by the State's Department of Culture, Recreation and Tourism (visiting Louisiana, Louisiana tourist attractions, etc). As to the identity of retail outlets and purchases, again, MoveOn is not selling any goods or services at all, and thus has no outlets to compete with those of the Lieutenant Governor.

As far as the similarity in advertising media is concerned, in a comprehensive recitation of all the advertising outsets through which the Department promotes tourism using the Service Mark, the Lieutenant Governor fails even to mention any use of the Service Mark on billboards.   (Dardenne Aff. (Doc. 2-2) ¶13). Although MoveOn did run one television advertisement depicting the Billboard and discussing the controversy over it, no one viewing the commercial could reasonably be confused as to whether the State is the source of the Billboard or the advertisement. Thus, there appears to be little or no identity of advertising media.

1154289v1

With respect to the "digit" of defendant's intent, evidence that the defendant intended to confuse the public into believing that plaintiff is the source of or endorses defendant's product weighs in favor of a finding of likelihood of confusion. *Elvis Presley Enterprises*, 141 F.3d at 203.  However, a good faith intent to parody is not an intent to  confuse. *Id.* "If the defendant acted in good faith, then this digit of confusion becomes a nonfactor in the likelihood-of-confusion analysis, rather than weighing in favor of a likelihood of confusion." *Id.*

Finally, actual confusion is considered the "best evidence of a likelihood of confusion." *Id*. at 203 (quoting *Amstar Corp. v. Domino's Pizza, Inc*., 615 F.2d 252, 263 (5th Cir. 1980)).  "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion…or consumer surveys…." *Scott Fetzer Co*., 381 F.3d at 486.  In this case, the Lieutenant Governor has offered neither type of evidence.  Indeed, the Lieutenant Governor has not identified a single instance in which any individual who has seen the Billboard has actually been confused about whether the Billboard is associated with the State of Louisiana or the Department of Culture, Recreation and Tourism and/or the Office of Lieutenant Governor.

Based on an analysis of the factors used by the Fifth Circuit in the context of parody, then, the Lieutenant Governor cannot demonstrate the likelihood of confusion in this case.

**B.**  **The Lieutenant Governor Cannot Establish Infringement Under State Law**

The Lieutenant Governor has also brought an action for trademark infringement under Louisiana law. As noted by the Court in *Prudhomme v. Proctor & Gamble*, the requirements for trademark infringement under Louisiana law  mirror those required for such actions under the Lanham Act. 800 F.Supp. 390, 396 (E.D.La.1992) (finding that "because plaintiffs...satisfied the Lanham Act requirements, their complaint withstands dismissal under these state claims as well."). Thus, the arguments made above apply equally to the State's

1154289v1

trademark infringement claims.  The record leads to  one conclusion – the preliminary injunction should be denied.

The Lieutenant Governor takes the startling position that likelihood of confusion is not a necessary element of the claim for trademark infringement under Louisiana law.  (Pl. Mem. at 18-19.)  This is patently incorrect. Both Louisiana's jurisprudentially developed law of unfair competition and statutory trademark law clearly require proof of a likelihood of confusion. La. R.S. 51:222(1) (Infringement)[8]; *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.,* 725 F.2d 336, 343 n. 6 (5th Cir.1984) ("Likelihood of confusion is required explicitly by the Louisiana Trademark Statute."); *Gulf Coast Bank v. Gulf Coast Bank & Trust Co*., 94-2203 (La. 4/10/95), 652 So. 2d 1306, 1308 ("We conclude that one need not prove fraud to enjoin another from using its trade name, but rather must show that there is a likelihood of consumer confusion created by the defendant's use of the trade name."); *Marathon Manufacturing Co. v. Enerlite Products*, 676 F.2d 214, 217 (5th Cir. 1985) ("The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion.").  *See also*, 1 *McCarthy,* §2:8 at 2-20. ("In trademark cases, whatever route one travels, whether by the street called 'trademark infringement' or on the broad avenue of 'unfair competition,' all paths lead to the same enquiry--whether defendant's acts are likely to cause confusion.").[9]

---

[8] La. R.S. 51:222(1) (Infringement) states: "Any person who shall: Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this Sub-part in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with **which such use is likely to cause confusion** or mistake or to deceive as to the source of origin of such goods or services[.]" (emphasis added)

[9] The *Louisiana Grantite* case cited by the Lieutenant Governor for the proposition discussed in the text simply states that in order to establish liability for infringement of a mark whose distinctiveness is acquired by virtue of secondary meaning, a likelihood of confusion

24

Therefore, this Court should apply the same Lanham Act analysis set forth above to the state trademark infringement claims and find that MoveOn's use of a modified version of the Service Mark as a parody ensures that there is no real possibility, let alone a likelihood, of confusion.

## III.   THE LIEUTENANT GOVERNOR HAS NOT ESTABLISHED THE OTHER ELEMENTS NECESSARY FOR GRANT OF A PRELIMINARY INJUNCTION

### A.   There Is No Substantial Threat of Injury of Any Kind

In order for a preliminary injunction to issue, there must be "a *substantial threat* that plaintiff will suffer irreparable injury if the injunction is denied." *Sugar Busters LLC v. Brennan*, 177 F.3d at 265 (emphasis added).  A preliminary injunction will not issue "based only on a possibility of irreparable harm" as it is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008); *Ebay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 1840-41 (2006); *Perfect 10, Inc. v. Google, Inc.* 653 F.3d 979 (9th Cir. 2011). A plaintiff seeking a preliminary injunction is required to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* (emphasis in original).  As admitted in the Plaintiff's Memorandum, since *Winter* and *Ebay*, there is no room to argue that irreparable harm will ever be presumed and specific, concrete injury that cannot be compensated in damages must be proven before an injunction will issue. (Pl. Mem. at 11-13).

Here the Lieutenant Governor has not demonstrated a "substantial threat" of any injury at all. By the Lieutenant Governor's own account, the Department of Culture, Recreation and Tourism has spent nearly $70 million in promoting Louisiana tourism throughout the United

---

must be proven.  However, that case in no way suggests that the same requirement does not exist with respect to inherently distinctive marks.  47 So3d 573, 582.

States and internationally, using the Service Mark.   (Dardenne Aff. ¶13). The Lieutenant Governor has not explained how a single billboard in Baton Rouge, parodying the Service Mark to communicate a political message, could conceivably threaten the effectiveness of this massive campaign or otherwise cause irreparable injury to the State.   There is simply no showing of injury here.

### B.        The Balance of Hardships Favors MoveOn

As to the third element that must be established, a plaintiff seeking a preliminary injunction must show "that the threatened injury outweighs any damage that the injunction might cause defendants."   *Sugar Busters LLC v. Brennan*, 177 F.3d at 265.   In this case, as demonstrated above, the Lieutenant Governor has not demonstrated that there is the occurrence or threat of any injury whatsoever. On the other hand, MoveOn stands to suffer an impermissible infringement of its right to criticize the State Government of Louisiana—a right at the core of those protected by the First Amendment.   In these circumstances, the balance of hardships clearly favors MoveOn.

### C.        The Public Interest Weighs Against Grant of an Injunction

Finally, in order to obtain a preliminary injunction, plaintiff must show "that the injunction will not disserve the public interest." *Sugar Busters LLC v. Brennan*, 177 F.3d at 265. In this case, issuance of an injunction would clearly be adverse to the public interest. There is no need at all in this case, let alone a compelling one, for an injunction to protect the Service Mark as an asset of the State.   On the other hand, an injunction would have the chilling effect of silencing protected political speech and expression that form the core of the First Amendment. *See e.g. Mills v. Alabama,* 384 U.S. 214, 218 (1966) ("there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs"); *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1963) (First

26

Amendment reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open and that it may include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials").

## **CONCLUSION**

For the reasons set forth above, the Lieutenant Governor has failed to establish any of the elements necessary to obtain a preliminary injunction.  Accordingly, the Plaintiff's Motion for Preliminary Injunction should be denied.

Dated: March 24, 2014                                          Respectfully submitted,


      */s/ Joseph E. Sandler*                                 */s/ Stephen G. Bullock*
Joseph E. Sandler (*pro hac vice*,            Stephen G. Bullock (La. Bar No. 3648)
  Reg. No. Pending)                                    Lesli D. Harris (La. Bar No. 28070)
Dara Lindenbaum (*pro hac vice*,            Matthew S. Almon (La. Bar No. 31013)
  Reg. No. Pending)                                         Of
         Of                                                  STONE PIGMAN WALTHER
SANDLER, REIFF, YOUNG & LAMB         WITTMANN, L.L.C.
1025 Vermont Ave. N.W. Suite 300           546 Carondelet Street
Washington, D.C. 20005                          New Orleans, Louisiana  70130
Telephone: (202) 479-1111                      Telephone: (504) 581-3200
Sandler@sandlerreiff.com                       Facsimile: (504) 581-3361
Lindenbaum@sandlerreiff.com

Counsel for MoveOn.org Civic Action

1154289v1

**C E R T I F I C A T E**

I hereby certify that on March 24, 2014, I electronically filed the foregoing Memorandum in Opposition to Motion for Preliminary Injunction with the Clerk of Court of the United States District Court for the Middle District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel of record for Plaintiff, who are CM/ECF participants.

_/s/ Matthew S. Almon_